UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSE LUEVANO,

        Plaintiff,

    v.

ANTHONY JENKINS, et al.,

        Defendants.

No.  2:22-cv-0091 TLN KJN P

ORDER AND FINDINGS AND
RECOMMENDATIONS

        Plaintiff is a state prisoner, proceeding pro se, with a civil rights action under 42 U.S.C. § 1983.  Defendants' fully briefed motion for summary judgment based on exhaustion of administrative remedies is before the court.  As discussed below, the undersigned recommends that defendants' motion be granted.

I.  Plaintiff's Verified Complaint

        This action proceeds on plaintiff's original complaint, in which plaintiff alleges that on March 16, 2021, at Mule Creek State Prison, defendants Jenkins, Janam and Bickle used excessive force on plaintiff.  (ECF No. 1.)[1]  Plaintiff also included his own declaration.  (ECF No. 1 at 8-14.)

////

---

[1]  On June 9, 2022, plaintiff consented to dismissal of defendants Griffin and Parker, who were dismissed on June 15, 2022.  (ECF Nos. 10 & 11.)

1

1    II. Defendants' Motion for Summary Judgment

2        A. Legal Standards for Summary Judgment

3        Summary judgment is appropriate when it is demonstrated that the standard set forth in

4    Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the

5    movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

6    judgment as a matter of law." Fed. R. Civ. P. 56(a).

7                Under summary judgment practice, the moving party always bears
              the initial responsibility of informing the district court of the basis
8             for its motion, and identifying those portions of "the pleadings,
              depositions, answers to interrogatories, and admissions on file,
9             together with the affidavits, if any," which it believes demonstrate
              the absence of a genuine issue of material fact.
10

11   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

12   56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need

13   only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

14   Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

15   387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory

16   committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

17   burden of production may rely on a showing that a party who does have the trial burden cannot

18   produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

19   should be entered, after adequate time for discovery and upon motion, against a party who fails to

20   make a showing sufficient to establish the existence of an element essential to that party's case,

21   and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

22   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

23   necessarily renders all other facts immaterial."  Id. at 323.

24       Consequently, if the moving party meets its initial responsibility, the burden then shifts to

25   the opposing party to establish that a genuine issue as to any material fact actually exists.  See

26   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

27   establish the existence of such a factual dispute, the opposing party may not rely upon the

28   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

                                            2

form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587; Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

3

trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on August 15, 2023 (ECF No. 45-5), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

B.  Objection to Hollis Declaration

Plaintiff submitted the declaration of fellow inmate Marvin Hollis, who assisted plaintiff in preparing his opposition.  Hollis claims he has been incarcerated for almost 30 years and has filed hundreds of administrative grievances, concluding that plaintiff's grievances were improperly rejected based on Hollis' "experience in CDCR."  (ECF No. 53 at 54.)  Defendants seek to strike Hollis' declaration because Hollis fails to include any information regarding plaintiff's appeals relevant to this case, plaintiff's efforts to appeal his administrative remedies, or any other information that might demonstrate a disputed fact as to whether plaintiff exhausted administrative remedies as to the March 16, 2021 incident.  (ECF No. 54 at 6.)

The undersigned reviewed Mr. Hollis' declaration and agrees that he failed to provide pertinent facts relevant to the claims at issue here.  Therefore, defendants' request to strike the Hollis declaration is granted.

C.  Failure to Support Disputed Facts

Initially, as argued by defendants, plaintiff largely failed to comply with Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "a party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record. . . ."  Id.; see also Local Rule 260(b).  While plaintiff filed a separate document identifying which facts contained in defendants' statement of undisputed facts were disputed or undisputed, plaintiff failed to cite to evidence supporting such identification.

However, it is well-established that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam).  Nevertheless, "[p]ro se litigants must follow the same rules of procedure that govern other litigants."  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987),

1    overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. 2012) (en banc).

2    That said, an inmate's choice to proceed without counsel "is less than voluntary" and is subject to

3    "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal

4    materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364-65 & n.4 (9th

5    Cir. 1986).  Therefore, prisoners should not be held to a standard of "strict literalness" with

6    respect to the requirements of the summary judgment rule.  Id.

7            Further, the Ninth Circuit has cautioned that district courts are to "construe liberally

8    motion papers and pleadings filed by pro se inmates and should avoid applying summary

9    judgment rules strictly."  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  The non-

10   moving party's evidence "is to be believed, and all justifiable inferences are to be drawn in [his]

11   favor . . . . [his] version of any disputed issue of fact is thus presumed correct." Eastman Kodak

12   Co. v. Image Technical Services, Inc., 504 U.S. 451, 456 (1992) (internal quotation marks

13   omitted).  Accordingly, the court considers the record before it in its entirety despite plaintiff's

14   failure to be in strict compliance with the applicable rules.  However, only those assertions which

15   have evidentiary support in the record are considered.

16           D.  Undisputed Facts ("UDF")[2]

17           1.  Plaintiff is an inmate in the custody of the CDCR.

18           2.  Plaintiff's complaint was signed on November 29, 2021, and was filed in this action on

19   January 15, 2022, regarding alleged incidents at Mule Creek State Prison ("MCSP").

20           3.  At all times relevant herein, defendants were correctional officers at MCSP.

21           4.  The undersigned found plaintiff's allegations stated potentially cognizable Eighth

22   Amendment claims against defendants Jenkins, Janam and Bickle based on plaintiff's claims that

23   such defendants used excessive force on plaintiff on March 16, 2021, while he was housed at

24   MCSP.  (ECF No. 7.)  Plaintiff's remaining claims and defendants were dismissed with plaintiff's

25   consent.  (ECF Nos. 10, 11.)

26           5.  At all times relevant herein, CDCR and MCSP had an administrative grievance process

27   _____

28   [2]  For purposes of summary judgment, the undersigned finds these facts are undisputed, unless
     otherwise indicated.

for inmates.  Since June 2020, inmates may now submit a written grievance containing one or more claims, subject to the requirements in section 3482, to dispute a policy, decision, action, condition, or omission by CDCR or CDCR staff that causes some measurable harm to the inmate's "health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3481(a) (2021).

6.  The grievance process has two levels of review.  Id.  The new process requires the inmate to submit a grievance in writing to the Institutional Office of Grievances ("OOG") at the prison, re-entry facility, or fire camp where they are housed within 30-days of the grieved incident. Cal. Code Regs. tit. 15, § 3482(a)(1) and (b).  The inmate shall submit the grievance on a form 602-1, if available, or by other means provided by the institution.  Cal. Code Regs. tit. 15, § 3482(a)(2) and (c).  If the inmate wishes to appeal the OOG decision, they may do so in writing to the Office of Appeals ("OOA") within 30 days.  Cal. Code Regs. tit. 15, § 3485(a)-(b).

7.  The inmate must describe all information known and available regarding the claim, including key dates and times, names, and titles of all involved staff (or descriptions of those staff members), and names and titles of all witnesses to the best of the claimant's knowledge.  Inmates must also include any and all supporting documents available.  Claims may be rejected for any of the reasons provided in Cal. Code Regs., tit. 15, § 3487, including failure to submit the claim within the applicable time frames, concerns an anticipated decision, duplicative, claim concerns harm to someone other than the claimant, and the claim concerns the regulatory framework of the grievance or appeal process itself.  Completion of the review process by the OOA constitutes exhaustion of all administrative remedies available to a claimant.  A claim is not exhausted if it was disallowed pursuant to subsections 3482(d)(3) or 3485(d)(3) or rejected pursuant to subsection 3487(a).

8.  If plaintiff submitted a grievance to another institution regarding an event that occurred at MCSP, the institution would forward the grievance to MCSP for review.  Post-June 2020 grievances are reflected on a single print out and in a single system, regardless of the institution involved.  All grievance coordinators have access to all new grievances and can testify as to their authenticity, regardless of the institution handling the grievance.

9.  The OOA receives, reviews, and maintains all non-medical inmate grievances at the

1    final level of review. A final decision by the OOA generally exhausts an inmate grievance.

2        10.  Plaintiff submitted multiple grievances to MCSP's OOG and the OOA between

3    March 16, 2021, when plaintiff's allegations first giving rise to his lawsuit occurred, through

4    January 18, 2022, when plaintiff filed his complaint.

5        11.  Plaintiff submitted four grievances during the relevant time frame that are relevant to

6    the allegations in his Complaint - Grievance Log Numbers 113082, 132418, 132564, and 151569.

7    The appeal of another grievance is also relevant – 127675.

8        12.  In Grievance Log Number 113082, plaintiff alleged that Jenkins, Bickle, and Janam

9    used unnecessary excessive force on March 16, 2021.  (ECF No. 45-3 at 12.)  Plaintiff dated the

10   grievance April 28, 2021, and MCSP stamped it received on April 29, 2021.  (Id. at 13.)  The

11   MCSP OOG rejected the grievance on April 29, 2021, stating that plaintiff failed to submit his

12   grievance within the applicable 30-day timeframe.[3]  (ECF No. 45-4 at 14.)  The MCSP OOG

13   informed plaintiff that his allegation of excessive use of force was rejected but would be

14   addressed outside the grievance process.[4]  (Id.)

15       13.  Plaintiff appealed the response to 113082 for untimeliness to the OOA.  In the appeal,

16   plaintiff included a letter stating he was going to wait to file his grievance until the RVR was

17   done but decided to just "get it done and tell [his] story."[5]  (ECF No. 45-4 at 13.)  The OOA

18   received the appeal on May 10, 2021.  The OOA denied the appeal of the rejection on July 1,

19   2021, stating that the allegation of excessive force occurred on March 16, 2021, but plaintiff did

20   not file his grievance until April 29, 2021, outside the 30-day time constraints as set forth in Cal.

21

22   [3]  Contrary to defendants' SUF (ECF No. 45-2 at 4), the rejection is appended as Exhibit B to the
     Moseley Declaration, ¶ 9 (ECF No. 35-4 at 10).

23

24   [4]  On May 3, 2021, a memo regarding "staff complaint response - grievance log #113082, noting
     that plaintiff's claim of excessive force was investigated outside the grievance process "due to a
25   prior verbal allegation that was reviewed previously."  (ECF No. 45-3 at 17.)  Because plaintiff
     verbally claimed use of excessive force, an investigation into staff misconduct took place prior to
26   plaintiff filing grievance 113082.  (Id. at 18.)  The investigation found staff did not violate CDCR
     policy, and plaintiff was reminded that in order to exhaust administrative remedies, he must
27   submit his staff misconduct grievance on 602-2 to the OOA for review.  (ECF No. 45-3 at 18.)

28   [5]  Plaintiff does not address this letter in his opposition.

Code Regs., tit. 15, §§ 3482(b) and 3487(a)(1).  (ECF No. 45-3 at 12.)  The reviewing official

added:  "It's important to note that the [OOG] investigated this claim outside the grievance

process, which was appropriate in this case."  (Id.)

      14.  Grievance Log Number 132418 concerns a letter plaintiff sent to the Office of

Internal Affairs ("OIA") dated April 12, 2021, regarding the alleged March 16, 2021 incident.

(ECF No. 45-4 at 15.)  On June 14, 2021, the OIA forwarded the letter to plaintiff's institution --

California State Prison, Solano ("SOL") -- stating that, "based upon a review of the

correspondence, it has been determined that the issue(s) can be addressed at the institutional

level."  (ECF No. 45-3 at 21.)  On June 25, 2021, after receiving the documentation from the

OIA, SOL sent a "Closure of Grievance" letter to plaintiff informing him that SOL reassigned the

grievance to MCSP for review and that MCSP would provide him with a response to his claim on

or before August 25, 2021. (ECF No. 45-3 at 20.)  SOL then forwarded the letter and

documentation to MCSP.  (Id.)

      15.  Grievance Log Number 132564 is the MCSP review of Grievance Log Number

132418 forwarded from SOL.  (ECF No. 45-3 at 28-34.)  MCSP OOG received plaintiff's

grievance as forwarded from SOL on June 25, 2021.  (Id. at 29.)  On June 25, 2021, MCSP OOG

sent plaintiff a closure of grievance letter stating that plaintiff's grievance was not assigned for

review or a response and it was "being rejected as a duplicate of log #113082, which has been

addressed and disproved."  (ECF No. 45-3 at 28.)  Plaintiff was further informed that if he was

dissatisfied with the rejection of 132564, he could appeal the rejection to the OOA.  (Id.)  Plaintiff

took no further action and did not appeal the rejection of 132564 to the OOA.[6]

      16.  In Grievance Log Number 151569, dated August 12, 2021, plaintiff again appealed

the March 16, 2021 excessive force claim.  (ECF No. 45-3 at 37-38.)  MCSP received this

grievance on August 13, 2021.  (Id. at 38.)  On August 13, 2021, MCSP OOG sent plaintiff a

closure of grievance letter stating that plaintiff's grievance was not assigned for review or a

---

[6]  In his response to defendants' SUF, plaintiff contends Fact No. 15 is disputed, but he fails to explain how or why.  The undersigned has reviewed the documents and edited UDF No. 15 in a minor way to comport with the documentary evidence as cited.

response and it was being rejected because (1) plaintiff failed to comply with the applicable time constraints; plaintiff needed to submit the grievance by April 15, 2021; (2) the claim was "substantially duplicative of a prior claim already submitted by you that is in process or has been answered"; and plaintiff's "allegation of excessive force on RVR #7070770 is rejected as a duplicate of log #113082, which has been addressed." (ECF No. 45-3 at 39.) Plaintiff was further informed that if he was dissatisfied with the response he could appeal the rejection decision to the CDCR's OOA. (Id.)

17. Plaintiff appealed the rejection of Grievance Log No. 151569 to the OOA, which was received on August 30, 2021. (ECF Nos. 45-3 at 36; 45-4 at 20.) Because the OOA's time to respond expired before it was able to render a decision, the OOA sent plaintiff a letter on October 30, 2021, stating that the time to respond had expired and that plaintiff would not be receiving any further response. (Id.) This meant that the lower level MCSP OOG rejection of the original grievance was not overturned and instead adopted by the OOA.[7] Cal. Code Regs. tit. 15, §§ 3482(b), 3487(a)(1), and 3487(a)(3).

18. In Grievance Log No. 127675, signed June 12, 2021, plaintiff alleged Officer Jenkins winked at him twice on June 11, 2021. (ECF No. 45-4 at 44.) Plaintiff alleged that he didn't know if this meant that Jenkins wanted to hurt plaintiff. Plaintiff requested that Jenkins not be permitted to work on the same yard as plaintiff due to a previous incident. (Id.) OOG received the appeal on June 14, 2021. (ECF No. 45-4 at 48.) On July 22, 2021, the grievance was disproved. (Id. at 49.) When plaintiff appealed this grievance to the OOA, he added new claims regarding the alleged March 16, 2021 incident. (ECF No. 45-4 at 42.) Appeal Log No. 127675 was received by the OOA on August 30, 2021, and was rejected on September 24, 2021, because plaintiff failed to timely appeal to the OOA. Plaintiff received the institution's decision letter on July 23, 2021, but waited until August 26, 2021, as indicated on the envelope as the date plaintiff provided to prison officials for mailing, to appeal to the OOA. In order to comply with the

_____

[7] In his response to defendants' SUF, plaintiff contends Fact Nos. 16 & 17 are disputed, but he fails to explain how or why. The undersigned has reviewed the documents and edited UDF Nos. 16 and 17 in minor ways to comport with the documentary evidence as cited.

1  applicable 30-day time constraints, plaintiff should have submitted his claim on or before August

2  22, 2021.

3        19.  Plaintiff also submitted various unrelated grievances and appeals during the relevant

4  time frame.  (ECF No. 45-4 at 6-7.)

5        20.  Aside from the appeals and grievances provided, plaintiff did not submit any other

6  appeals or grievances, related or unrelated to the allegations in his Complaint, during the relevant

7  time frame.  (ECF Nos. 45-3, 45-4.)[8]

8        E.  Legal Standards for Exhaustion of Administrative Remedies

9        The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be

10  brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a

11  prisoner confined in any jail, prison, or other correctional facility until such administrative

12  remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion

13  requirement applies to all inmate suits about prison life, whether they involve general

14  circumstances or particular episodes, and whether they allege excessive force or some other

15  wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

16        To satisfy the exhaustion requirement, a prisoner must file a grievance alerting prison

17  officials to the claims the plaintiff included in the complaint with the level of detail required by

18  the grievance system itself.  Jones v. Bock, 549 U.S. 199, 218-19 (2007); Porter, 534 U.S. at 524-

19  25 (the purpose of the exhaustion requirement is to give officials the "time and opportunity" to

20  address complaints internally before allowing the initiation of a federal case").  All claims alleged

21  by an inmate in a federal lawsuit against prison officials must be exhausted before the inmate files

22  the lawsuit; unexhausted claims must be dismissed without prejudice.   Booth v. Churner, 532

23  U.S. 731, 736, 741 (2001); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002)

24  (exhaustion must occur prior to filing suit and plaintiff may not exhaust while suit is pending).

25        A California prisoner is required to submit an inmate appeal at the appropriate level and

26

27  [8]  Plaintiff disputes this fact but points to no other grievance or appeal.  Plaintiff only provided appeals numbered 151569 and 113082 (ECF No. 53 at 39, 43), both of which were also provided by defendants (ECF No. 45-4 at 10-39).

28

1    proceed to the highest level of review available to him.  Butler v. Adams, 397 F.3d 1181, 1183

2    (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).

3              Burden Re Exhaustion

4              A defendant bears the burden of establishing that a plaintiff failed to exhaust an available

5    administrative process.  Fordley v. Lizarraga, 18 F. 4th 344, 350-51 (9th Cir. 2021).  If a

6    defendant meets its initial burden to show failure to exhaust an available administrative process,

7    the burden shifts to the plaintiff to show that the process was not available to him.  Id. at 351.  But

8    the "ultimate burden of proving that the inmate has not exhausted his claims remains with the

9    defendants."  Id. (citing Draper v. Rosario, 836 F.3d 1072, 1079 (9th Cir. 2016).)

10             Administrative Remedy Unavailable

11             An administrative remedy is not available (and thus exhaustion is not required) where:

12   (1) the administrative process is a dead end because prison officials are consistently unable or

13   unwilling to provide any relief via that process; (2) the process is so opaque that no ordinary

14   prisoner could navigate it; and (3) officials thwart the prisoner's attempts to use the process

15   "through machination, misrepresentation, or intimidation."  Ross v. Blake, 578 U.S. 632, 643-44

16   (2016).  The Ninth Circuit has held that a prison's complete failure to process a grievance renders

17   the administrative process unavailable.  Andres v. Marshall, 867 F.3d 1076, 1079 (9th Cir. 2017).

18   The failure to timely process a grievance may render the process unavailable depending on the

19   circumstances.  Fordley, 18 F.4th at 350,  354-55.

20        F.  Discussion

21             1.  Did plaintiff exhaust?

22             Defendants provided evidence that none of the five grievances submitted during the

23   applicable time frame were addressed at the final level of review on the merits of plaintiff's

24   claims.  Rather, each grievance was rejected based on plaintiff's failure to comply with CDCR

25   appeal procedures.  Thus, the burden shifts to plaintiff to demonstrate remedies were unavailable.

26             2.  Were remedies available?

27             In his opposition, plaintiff relies on grievance log numbers 113082 and 151569.  The

28   undersigned first addresses plaintiff's arguments in support of his claims that he should be

1  excused from exhaustion, that administrative remedies were not available, or that his time to file a

2  grievance was extended, and then addresses the relevant grievances individually.

3          Defendants' Actions Excuse Plaintiff from Exhaustion

4          First, plaintiff contends that after the excessive force incident, which caused him multiple

5  physical and psychological injuries, defendants intimidated and threatened plaintiff that if he

6  complained about what they did, further harm would come to plaintiff and that his time would be

7  difficult as long as he was housed at MCSP.  (ECF No. 53 at 3.)  This caused plaintiff to be

8  scared for his life and kept him from initially filing his appeal.  In his declaration submitted with

9  his complaint, plaintiff declared that he "took a long time to file the 602 because [he] was afraid

10 the officers who assaulted [him] would retaliate against [plaintiff] if [he] filed a 602."  (ECF No.

11 1 at 13.)  He declared that defendant Jenkins continued to harass plaintiff; in late June of 2021,

12 Jenkins passed by plaintiff's cell and winked at plaintiff as they made eye contact through the cell

13 window.  (Id.)  Plaintiff believed the wink was a form of intimidation and an acknowledgment

14 that Jenkins assaulted plaintiff.  (Id.)

15         Defendants argue that plaintiff's unsupported allegations are contradicted by plaintiff's

16 own letter to the OOA explaining that the grievance was untimely because he was going to wait

17 to file his grievance until the RVR was done, but just decided to "get it done and tell [his] story."

18 (UDF 13.)  Defendants contend that plaintiff "cannot create a genuine issue of material fact to

19 survive summary judgment by contradicting his earlier version of the facts."  (ECF No. 45-1 at

20 11) (quoting Block v. City of Los Angeles, 253 F.3d 410, 419 n.2 (9th Cir. 2001).)  Because

21 plaintiff failed to provide additional evidence to support his claims of intimidation, defendants

22 maintain that plaintiff's claims of retaliation and intimidation are unavailing.

23         The Ninth Circuit has held that the threat of retaliation for reporting an incident may

24 excuse a prisoner's failure to exhaust administrative remedies.  McBride v. Lopez, 807 F.3d 982,

25 987 (9th Cir. 2015).  Under McBride, two conditions must be met:  (1) the inmate actually

26 believed he would suffer retaliation for filing a grievance about the issue in question, and (2) his

27 belief was objectively reasonable.  807 F.3d at 987, 988.

28         Here, plaintiff's allegations are not supported with specific facts as to a particular

1  defendant's actions taken prior to plaintiff filing grievance 113082.  Unlike the inmate in

2  McBride who identified a particular verbal threat, plaintiff's claims are unsupported, referring

3  generally to retaliation, intimidation, and harassment, but without any specific facts to support

4  such conclusory assertions.  See Matsushita Elec., 475 U.S. at 587 ("the nonmoving party must

5  come forward with 'specific facts showing that there is a genuine issue for trial.'")  Moreover,

6  plaintiff utterly fails to address his own letter to OOA claiming he did not file his appeal earlier

7  for an entirely different reason.  (UDF 13.)

8          But even assuming plaintiff was reasonably frightened of defendants following the use of

9  force on March 16, 2021, and was scared they would retaliate, plaintiff fails to meet the objective

10  prong of McBride.  The only specific factual allegation plaintiff includes is that defendant Jenkins

11  winked at plaintiff.  Although plaintiff declares this took place in late June of 2021, his grievance

12  concerning the wink states that it occurred on June 11, 2021 (UDF 18).  In any event, both dates

13  were over 86 days after the March 16, 2021 incident.  Thus, the timing alone fails to meet the

14  objective prong.  But the mere fact that defendant Jenkins winked at plaintiff also fails to

15  demonstrate an objective threat of retaliation if an inmate used the grievance process.  There must

16  be some basis to support a finding that a reasonable prisoner of ordinary firmness would

17  understand that defendant Jenkins' action, taken almost three months after the incident at issue,

18  threatened retaliation if the prisoner chose to use the prison's grievance process.  See McBride

19  807 F.3d at 988.  Plaintiff does not provide such basis, and the undersigned finds no such basis in

20  the record.

21          The undersigned finds that plaintiff should not be excused from the exhaustion

22  requirement based on such unsupported allegations of retaliation and unspecified threats.

23          Second, plaintiff also declares he suffers from brain fog resulting from the incident, has

24  been unable to think right, has a lot of headaches, and "had a hard time writing the 602."  (ECF

25  No. 1 1t 13.)

26          "A number of courts, including courts within the Ninth Circuit, have recognized that an

27  administrative remedy can be 'effectively unavailable' when:  "(1) an inmate's untimely filling of

28  a grievance is because of a physical injury, and (2) the grievance system rejects the inmate's

subsequent attempt to exhaust his remedies based on the untimely filing of the grievance." <u>Baker v. Villalobos</u>, 2021 WL 6804237, at *7 (C.D. Cal. Sept. 29, 2021) (collecting cases), <u>report and recommendation adopted</u>, 2022 WL 326132 (C.D. Cal. Feb. 1, 2022), <u>aff'd</u>, 2023 WL 5608985 (9th Cir. Aug. 30, 2023).  If the court finds that the injury or illness constitutes a defense to nonexhaustion, the inmate is required to timely file a grievance once he is no longer inhibited by such injury or illness, and to have such remedies denied before courts will find the remedies were unavailable.  <u>Baker</u>, 2021 WL 6804237, at *7 (citations omitted).

Here, on the date of the incident, plaintiff was taken to an outside hospital but returned to his cell early the next morning.  (ECF No. 54-1 at 4.)  Plaintiff provided no medical evidence demonstrating his inability to write a grievance; indeed, he claims he had a hard time writing it, but does not state he was unable to do so.  Further, as argued by defendants, plaintiff's letter to the OOA states plaintiff intentionally waited to file a grievance.  The instant record does not support an extension of the filing deadline based on plaintiff's alleged physical injuries.

Third, plaintiff claims that he attempted to exhaust his administrative remedies in good faith and was improperly blocked by defendants' failure to have the rights and responsibility statement available.  (ECF No. 53 at 8) (citing Cal. Penal Code section 148.6(a)(1)&(2); <u>see also</u> <u>Chaker v. Crogan</u>, 428 F.3d 1215 (9th Cir. 2005).  Defendants contend such argument is unavailing because plaintiff's grievances were not rejected for lack of such document.

Defendants are correct that none of the submitted grievances were rejected based on plaintiff's failure to provide the rights and responsibility statement.  But to the extent plaintiff contends he was unable to file a grievance based on not having such a form, plaintiff provides no specific facts to support his conclusory statement, for example, when did he seek to file such grievance and who specifically failed to provide such statement.  Such vague and conclusory claim is insufficient.  In addition, plaintiff does not explain his citation to <u>Chaker</u>.  In <u>Chaker</u>, the Ninth Circuit held that a California statute unconstitutionally restricted certain viewpoints by making it a misdemeanor to file false complaint reports with the police department.  428 F.3d 1215.  Plaintiff fails to show how <u>Chaker</u> is relevant to plaintiff's claim concerning administrative exhaustion to bring claims in federal court.

14

<u>New Rules Rendered Remedies Unavailable</u>

Plaintiff argues that the new rules were not included in Title 15 until after the update through July 1, 2021, which kept inmates unaware of such new rules.  (ECF No. 53 at 4.) Further, plaintiff contends that the appeals process is difficult to understand and navigate until set forth in Title 15, and such new rules effective 2020 were not printed in Title 15 until well after the date of the instant incident.  Plaintiff contends that he was not aware of such new rules until 2023 when such rules were printed in the new blue book (CDCR) Title 15.  (ECF No. 53 at 4.) Plaintiff was also not aware of the critical 30-day time limit to file an appeal to the next level.

Defendants counter that the new rules are immaterial because the prior years' regulations set forth the same time limits for submitting an inmate grievance.  (ECF No. 54 at 3, <u>citing</u> <u>see</u> <u>e.g.</u>, Cal. Code Regs., tit. 15 §§ 3084.6(c)(4), 3084.8(b) (2019) (likewise setting 30-day deadline).)  In addition, plaintiff was well aware of the inmate grievance process, previously submitting multiple inmate grievances (UDF 19).

The undersigned is persuaded that the amendment of the rules did not have an impact on whether or not plaintiff timely filed a grievance because the filing deadlines did not change.[9] <u>Compare</u> Cal. Code Regs., tit. 15, §§ 3084.1(g), 3084.6 (c)(4), 3084.8(b) (2020) to Cal. Code Regs., tit. 15, §§ 3482(b), 3485(b), and 3487(a)(1)(2021).  Moreover, as noted above, plaintiff's letter to the OOA demonstrates an entirely different reason for plaintiff failing to timely file grievance 113082, and plaintiff failed to rebut such evidence.

Further, the undersigned agrees that plaintiff's claim that the appeals process was too hard to navigate is conclusory and not supported by specific facts or evidence sufficient to meet the requirements of <u>Ross</u>, 578 U.S. at 644 ("an inmate is required to exhaust those, but only those grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'")  Here, plaintiff provides no facts or evidence showing that the grievance procedure was so difficult it was not "capable of use" or operated as a simple dead end, or that prison staff

_____

[9]  The 2021 regulations took effect on June 10, 2021, after the March 16, 2021 incident, and after plaintiff submitted grievance 113082 on April 29, 2021.  (UDF 12.)  However, plaintiff submitted grievance 151569 on August 13, 2021, after the 2021 regulations were implemented.  (UDF 16.) Thus, both sets of regulations are discussed herein.

prevented plaintiff from using the procedures.  Plaintiff's conclusory arguments fail to demonstrate the grievance process was not available.  See Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014) (prisoner must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.")

Similarly unavailing is plaintiff's claim that the appeals process generally is inadequate because it leads nowhere.  (ECF No. 53 at 6.)  As the Supreme Court confirmed in 2016, the high court has rejected every attempt to deviate from the PLRA's exhaustion requirement.  Ross, 578 U.S. at 639-40 (citing Booth, 532 U.S. at 731 (even where the prison cannot provide the relief sought, i.e., money damages, prisoners are required to exhaust administrative remedies prior to bringing suit in federal court); Porter, 534 U.S. at 520 (rejecting proposal to exclude excessive force claims from exhaustion requirement).  Plaintiff's subjective belief that the appeals process was futile is not an exception to the exhaustion process.  See Booth, 532 U.S. at 741 & n.6 (Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.); Melendez v. Diaz, 2023 WL 3063291, at *3-4 (E.D. Cal. Apr. 24, 2023) ("Contrary to Plaintiffs' assertions, it is immaterial whether the parties agree that the administrative process could provide a form of relief -- Congress deliberately amended the PLRA to prevent prisoners from bypassing the administrative process with limited prayers for relief."), report and recommendation adopted sub nom. Melendez v. Ndoh, 2023 WL 5723825 (E.D. Cal. Sept. 5, 2023).  Rather, as set forth above, proper exhaustion is mandatory.

Time to Submit Grievance Extended

First, plaintiff argues that based on new rules there is no time limit on submitting a staff complaint, so it appears prison staff improperly rejected plaintiff's grievances.  (ECF No. 53 at 5) (citing Cal. Code Regs., tit. 15, §§ 3484 and 3485(b).)  He states the new rules are unclear, but plaintiff contends that § 3482(b) indicates the deadline to submit a claim shall be extended for the period of time a claimant is in the care of an outside hospital or temporarily housed in a medical or mental health crisis bed.  (ECF No. 53 at 5.)  Plaintiff claims he needs discovery in order to support his opposition and asks the court to act under Rule 56(d) of the Federal Rules of Civil

1   Procedure.  (ECF No. 53 at 5.)  Defendants counter that plaintiff is wrong on both counts; the new

2   regulations extend the time limits and toll the time when an inmate is incapacitated.  The code

3   sections cited by plaintiff were implemented after the March 26, 2021 incident and after he filed

4   the instant complaint.  (ECF No. 54 at 4 citing UDF 2.)  In addition, defendants point out that

5   plaintiff provided no evidence that he was out to a hospital or on mental health crisis bed between

6   March 16, 2021, and when he submitted grievance 113082 on April 29, 2021, and defendants

7   submit evidence to demonstrate that he was not.  (ECF No. 54.)

8       As argued by defendants, §§ 3484 and 3485 did not become effective until January 5,

9   2022, well after the March 16, 2021 incident, and therefore such new regulations do not apply.

10  Because such sections do not apply, no discovery is required to determine whether plaintiff was

11  entitled to an extension of the filing deadline under either section.  Further, defendants provided a

12  copy of plaintiff's movement history which confirms that after the March 16, 2021 incident,

13  plaintiff was transported to an outside hospital at 9:29 p.m. and returned at 1:08 a.m. on March

14  17, 2021, and that plaintiff had no other hospital or mental health crisis bed transfers between

15  March 16, 2021, and April 29, 2021.  (ECF No. 54-1 at 2, 4.)  Thus, even if the new regulations

16  were in effect, plaintiff would not be entitled to an extension of the thirty-day deadline based on

17  such hospital visit.

18      Therefore, plaintiff's reliance on such new regulations is unavailing, and his request for

19  discovery is denied.

20      Second, plaintiff also argues that none of plaintiff's allegations of staff misconduct were

21  submitted to internal affairs as required by CCR § 3484(d).  (ECF No. 53 at 7.)  However, even if

22  plaintiff's argument was relevant to the issue of exhaustion of administrative remedies, § 3484(d)

23  was also not implemented until January 5, 2022.  Therefore, plaintiff's argument is unavailing.

24      Third, plaintiff argues that under California Code of Regulations, title 15, § 3391(d),

25  inmates have a right to file a complaint against a peace officer and have it investigated, and under

26  § 3391(b), citizens have one year to file such a complaint, but the rule is not clear how long an

27  inmate has to file such a complaint.  (ECF No. 53 at 8.)

28      To the extent plaintiff argues that § 3391 extended the deadline to file his grievance,

17

1   plaintiff is mistaken.  Before it was amended,[10] section 3391 discussed citizen's complaints and

2   allowed twelve months for an allegation of misconduct to be made.  Kirkpatrick v. Giron, 2010

3   WL 2573208 (S.D. Cal. May 5, 2010) (citing Cal. Code Regs., tit. 15 § 3391(b) (2010).

4   However, § 3391 explicitly stated that the process for filing citizen's complaints is for use by

5   non-inmates.  Dicey v. Hanks, 2016 WL 792784, at *5 n.3 (E.D. Cal. Mar. 1, 2016) (citing Cal.

6   Code Regs. tit. 15, § 3391(b), (c) (2010), subsequently aff'd, 713 F. App'x 572 (9th Cir. 2018).

7   Because plaintiff was incarcerated at the time of the incident, § 3391 does not apply to plaintiff or

8   his appeal.  Rather, plaintiff was required to submit his grievance within thirty days.  Cal. Code

9   Regs., tit. 15, §§ 3084.1(g), 3084.6 (c)(4), 3084.8(b) (2020).

10          Grievance No. 151569

11          As to grievance 151569, plaintiff contends that when he received his final copy of RVR

12   No. 7070770, signed July 26, 2021, plaintiff had 30 days to file a grievance.  (ECF No. 53 at 9.)

13   Plaintiff claims he filed a timely grievance raising the excessive force incident and asked that the

14   RVR be dismissed, and good time credits be reinstated.  (Id.) (citing Ex. C (grievance 151569).)

15   Grievance 151569 was received by the OOG on August 13, 2021.  (Id.)  But despite such timely

16   submission and rules that allow multiple issues in a single grievance, he argues that the grievance

17   was improperly rejected on August 13, 2021, and the grievance was closed.  In addition, the OOG

18   told plaintiff that his allegations of excessive force were rejected as a duplicate of Log No.

19   113082.  But plaintiff contends that a grievance can only be a duplicate grievance if the prior

20   grievance was addressed, not rejected.  (ECF No. 53 at 10) (citing CCR §§ 3487(a)(3) & (2).)

21   Thus, he argues an adequate remedy did not remain available, even though he put prison officials

22   on notice of his claim.  (ECF No. 53 at 10) (citing Sapp v. Kimbrell, 623 F.3d 831, 824 (9th Cir.

23   2010)).

24          Defendants counter that the pendency of the related RVR is immaterial to whether

25

26   _____

     [10]  Section 3391 was amended on September 29, 2022, is now titled "Employee and Appointee
27   Conduct," and no longer contains subsections (c) or (d).  Id.  In any event, § 3391 does not apply
     because plaintiff must comply with the regulations governing proper administrative exhaustion by
28   a state prisoner.  "Compliance with prison grievance procedures, therefore, is all that is required
     by the PLRA to "'properly exhaust.'"  Jones, 549 U.S. at 218.

1    plaintiff properly exhausted his excessive force claims.  Because plaintiff was involved in the

2    March 16, 2021 incident, he was aware of the alleged excessive force on that date, and therefore

3    plaintiff was required to file his appeal concerning the use of force within thirty days from the use

4    of force incident.  Defendants argue that a grievance in which plaintiff challenged the RVR would

5    not have exhausted the underlying Eighth Amendment claims, even if plaintiff included them in

6    his grievance.  (ECF No. 54 at 3-4) (citing district court cases).

7            Defendants are correct.  While prisoners are now permitted to raise multiple issues in one

8    grievance, each issue must be timely raised.  Plaintiff's grievance 151569 was properly rejected

9    as untimely because plaintiff's excessive force claims should have been brought on or before

10   April 15, 2021, and as duplicative of his prior grievance 113082.  (UDF 16.)  "The cancellation or

11   rejection of an appeal at any level does not exhaust the administrative appeal process."  Applegate

12   v. California Dep't of Corr. & Rehab., 2020 WL 13444200, at *3 (N.D. Cal. July 1, 2020); Harris

13   v. Macomber, 2022 WL 4111067, at *7 (E.D. Cal. Sept. 8, 2022) (a cancelled grievance does not

14   exhaust administrative remedies), report and recommendation adopted, 2022 WL 4707087 (E.D.

15   Cal. Sept. 30, 2022).  A claim is not exhausted if it was disallowed pursuant to subsections

16   3482(d)(3) or 3485(d)(3) or rejected pursuant to subsection 3487(a).  (Id.)

17           In addition, although plaintiff sought different relief, the detailed facts set forth in

18   grievance 151569 were wholly focused on the excessive force issue and included no specific

19   factual challenges to the RVR or to the hearing on the RVR.  Thus, the alternative finding that

20   grievance 151569 was "substantially duplicative" of plaintiff's prior grievance 113082 was

21   proper.  (UDF 16.)  Departmental appeals coordinators may reject a prisoner's administrative

22   appeal for any reason set forth in § 3487, including failure to submit the claim within the

23   applicable time frames or because the claim is duplicative.  See Cal. Code Regs. tit. 15, § 3487.

24   A claim is not exhausted if it was disallowed under section 3487(a).

25           Further, when plaintiff appealed the rejection of grievance 151569, the OOA's time to

26   respond expired before a decision could be issued, essentially adopting the lower finding that

27   plaintiff's grievance was untimely and duplicative.  Cal.  Code Regs. tit. 15, §§ 3482(b),

28   3487(a)(1), and 3487(a)(3).  Because the initial appeal was properly rejected, grievance 151569

1    did not exhaust administrative remedies as to plaintiff's excessive force claims.

2           Finally, plaintiff argues that his grievance was proper because a duplicate of a rejected

3    grievance cannot be rejected as duplicative, citing § 3487(a)(3) and (2).  But plaintiff misreads

4    § 3487.  (ECF No. 54 at 6.)  Subsection (a)(3) provides an exception only "when the prior claim

5    was rejected pursuant to subsection 3487(a)(2)."  Cal. Code Regs., tit. 15 § 3487(a)(3).

6    Subsection (a)(2) addresses grievances rejected because "the claim concerns an anticipated

7    policy, decision, action, condition, or omission by the Department or departmental staff."  Cal.

8    Code Regs., tit. 15 § 3487(a)(2).  Plaintiff's grievance 151569 was not rejected based on any

9    exception set forth in § 3487(a)(2).  (UDF 16.)  Thus, plaintiff's argument fails.

10          Grievance 132564 (and Grievance 132418)

11          Similarly, as argued by defendants, plaintiff also misreads § 3487 in connection with

12   grievance 132564.  (ECF No. 54 at 6.)  As discussed, subsection (a)(3) provides a narrow

13   exception not applicable here because plaintiff's grievance 132564 was not rejected based on any

14   exception identified in subsection 3487(a)(2).  Cal. Code Regs., tit. 15 § 3487(a)(3), (a)(2); UDF

15   15.

16          Grievance 132564 was filed as a result of SOL forwarding grievance 132418 to MCSP

17   and concerned plaintiff's letter to the OIA about the March 16, 2021 incident.  (UDF 14, 15.)

18   Ultimately, grievance 132564 was rejected as duplicative of grievance 113082, and plaintiff did

19   not appeal such rejection, despite being advised of his ability to do so.  Because grievance 132564

20   was properly rejected, neither grievance 132564 nor grievance 132418 can serve to exhaust

21   plaintiff's administrative remedies.

22          Grievance 113082

23          Plaintiff points out that grievance Log No. 113082 was assigned as a use of force

24   grievance appeal and prison staff responded.  (ECF No. 53 at 10.)  Because No. 113082 was

25   denied and not rejected by the OOA, plaintiff argues that defendants forfeit their claims of

26   nonexhaustion because prison officials ignored the timeliness issue and rendered a decision on the

27   substance of plaintiff's claim.  (ECF No. 53 at 11) (citing see Reyes v. Smith, 810 F.3d 654, 659

28   (9th Cir. 2016).)  Plaintiff contends that he made a good faith effort to exhaust his administrative

1    remedies, and that defendants are attempting to use the appeals process to avoid civil liability.

2         Defendants counter that the OOG informed plaintiff that if he was dissatisfied with the

3    response, he could appeal the rejection decision to the OOA, and the OOA denied plaintiff's

4    appeal of the rejection stating that plaintiff did not timely file his grievance and therefore it was

5    properly rejected.  (ECF No. 54 at 5.)  Because the OOA confirmed that grievance 113082 was

6    properly rejected, such decision does not exhaust plaintiff's claims.

7         By the time plaintiff submitted his appeal regarding the March 16, 2021 incident, the

8    thirty-day time limit for submitting a grievance had expired.  (UDF 12.)  See Soto v. Warden of

9    Salinas Valley State Prison, 2016 WL 3661384, *4-5 (N.D. Cal. July 1, 2016) (plaintiff's

10   grievance regarding excessive force was untimely because he was not required to wait for

11   conclusion of disciplinary process to challenge use of excessive force during underlying incident).

12   Pursuant to the regulations, if plaintiff wanted to grieve the alleged use of excessive force by

13   defendants, he was required to submit a grievance containing those allegations within thirty days

14   of the incident date -- by April 15, 2021.  Cal. Code Regs. tit. 15, § 3084.8(b).  Instead, plaintiff

15   signed the grievance on April 28, 2021, and it was received by the OOG on April 29, 2021,

16   beyond the thirty-day deadline.  (UDF 12.)  Contrary to plaintiff's argument, the OOA denied

17   plaintiff's appeal of the OOG's rejection explaining that the grievance was properly rejected

18   because it was untimely.  A rejected claim is not exhausted.  Applegate, 2020 WL 13444200, at

19   *3; Harris, 2022 WL 4111067, at *7.

20        In Reyes, relied upon by plaintiff, the California prisoner had timely filed a grievance that

21   was addressed on the merits at every administrative review level.  Reyes, 810 F.3d at 657-59.

22   While Reyes failed to name all staff members involved in his case, as required by 15 Cal. Code

23   Regs. § 3084.2(a)(3), the court still found he exhausted his claim of deliberate indifference to his

24   serious medical needs because prison officials knew who was on the pain management committee

25   yet failed to address the prisoner's failure to name those involved and still addressed the merits.

26   Reyes, 810 F.3d at 656-57.  Thus, plaintiff's reliance on Reyes is unavailing because both the

27   OOG and the OOA decisions on grievance 113082 do not discuss the merits of plaintiff's

28   grievance.  (ECF No. 45-4 at 10, 14.)  The OOA did note that the OOG investigated the claim

21

1    outside the grievance process, but no detailed facts of plaintiff's claims are set forth or analyzed

2    in the OOA's decision.  (ECF No. 45-4 at 10.)  Rather, the OOA expressly found that the

3    rejection of the claim as untimely was proper.  (Id.)

4         Plaintiff contends grievance Log No. 113082 was assigned as a use of force grievance

5    appeal and prison staff responded, thus exhausting his claims.  However, the May 3, 2021

6    memorandum confirms that grievance 113082 was not assigned as a use of force grievance

7    appeal.  (ECF No. 45-3 at 18.)  Rather, the investigation was triggered by plaintiff's verbal

8    complaints and was completed on April 15, 2021, outside the grievance process by the

9    Institutional Executive Review Committee ("IERC") before plaintiff signed grievance 113082 on

10   April 28, 2021.  (ECF No. 45-3 at 18.)

11        To the extent plaintiff argues that prison officials were alerted to the nature of plaintiff's

12   excessive force claims because an investigation was prompted by plaintiff's verbal complaints

13   following the incident, the undersigned is not persuaded.  "Efforts outside the prison grievance

14   procedure do not demonstrate exhaustion of administrative remedies under the Prison Litigation

15   Reform Act (PLRA)."  Smith v. Gonzales, 2019 WL 6050964 (E.D. Cal. Nov. 14, 2019), report

16   and recommendation adopted in relevant part, 2021 WL 4065479 (E.D. Cal. Sept. 7, 2021).  To

17   properly exhaust available administrative remedies under the PLRA before filing an action in

18   federal court, a prisoner is required to comply with the prison's grievance procedures.  Woodford

19   v. Ngo, 548 U.S. 81, 93-95 (2006).  At the time relevant here, CDCR's grievance process

20   required that all administrative grievances be written and submitted on CDCR Form 602.  Cal.

21   Code Regs. tit. 15, § 3084.2(a)(1).  Thus, plaintiff's verbal notice was not adequate.  While such

22   verbal notice triggered an investigation outside the grievance process by the IERC, outside review

23   of a use of force incident by the IERC as a review of an inmate complaint under the use of force

24   regulations does not exhaust the inmate's administrative remedies for claims arising from the use

25   of force.  See Baker, 2021 WL 6804237 at *6 (prisoner unable to rely on outside review of use of

26   force incident by the IERC because such review does not exhaust the prisoner's administrative

27   remedies for claims arising from the use of force); Adams v. Garcia, 2019 WL 1441679 (C.D.

28   Cal. Mar. 26, 2019) (rejecting prisoner's argument that use of force review by the IERC

exhausted prisoner's administrative remedies, comparing §§ 3084.7(d)(3), 3084.1(b)

(administrative grievance procedures) to §3268.1(e) reporting and investigating the use of force

for institution or facility staff.)

   While such processes are different, and plaintiff is required to comply with the prison's

administrative grievance procedures, the May 3, 2021 memorandum informed plaintiff that he

could appeal the staff misconduct grievance on a 602-2 to the Office of Appeals for review.

(ECF No. 45-3 at 18.)  And plaintiff did pursue grievance 113082 to the OOA.  But because the

IERC investigation was completed before grievance 113082 was received by the OOG, such

grievance 113082 could not have appealed the IERC decision.  If plaintiff wanted to appeal the

result of the IERC investigation, he was required to file an appeal of that decision with the OOA

as directed.  Plaintiff points to no such appeal, and the appeals discussed herein did not challenge

the April 15, 2021 IERC decision.

   Grievance 127675

   In this last grievance, plaintiff claimed that defendant Jenkins winked at plaintiff on June

11, 2021.  (UDF 18.)  But since such allegation occurred after the March 16, 2021 incident,

grievance 127675 cannot serve to exhaust plaintiff's excessive force claims herein.  Plaintiff

appealed the disproval of such grievance and added facts concerning the March 16, 2021 incident.

But it is undisputed that plaintiff failed to submit the appeal within thirty days.  (UDF 18.)  Thus,

such appeal was properly rejected.  In any event, to the extent plaintiff attempted to exhaust his

excessive force claims through his appeal of such grievance, such efforts failed because they were

untimely, and because the initial grievance did not contain any facts concerning the March 16,

2021 use of force, such grievance could not have exhausted the instant excessive force claims.

   Accordingly, grievance 113082 could not have exhausted plaintiff's claims because it was

properly denied as untimely.

   G.  Conclusion

   For all of the above reasons, the undersigned recommends that defendants' motion be

granted.

////

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' request to strike the declaration of inmate Marvin Hollis (ECF No. 54 at 6) is granted;

2. The Clerk of the Court is directed to strike the Hollis declaration (ECF No. 53 at 52-55); and

3. Plaintiff's request for discovery (ECF No. 53 at 5) is denied.

Further IT IS RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 45) be granted;

2. The Clerk of the Court shall terminate this action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 30, 2024

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/luev0091.msj.fte

24